UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EFRAIN J. MUNIZ,

                              Plaintiff,

      -v.-                                                        9:04-CV-0479
                                                                 (TJM/GHL)

GLENN S. GOORD, Commissioner of Correctional
Services (DOCS); DR. LESTER WRIGHT, Deputy
Commissioner, Chief Medical Officer; JUSTIN
TAYLOR, Superintendent Gouverneur Correctional
Facility,

                              Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

EFRAIN J. MUNIZ, 80-A-0959
   Plaintiff, *Pro Se*
Gouverneur Correctional Facility
Scotch Settlement Road
P.O. Box 480
Gouverneur, NY 13642

HON. ANDREW M. CUOMO                                  STEVEN H. SCHWARTZ, ESQ.
Attorney General for the State of New York            Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

      This action has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to Local Rule 72.3(c) and 28

U.S.C. § 636(b).  Efrain J. Muniz ("Plaintiff") commenced this *pro se* civil rights action pursuant

to 42 U.S.C. § 1983 against three employees of the New York State Department of Correctional

Services ("DOCS")–DOCS Commissioner Glenn S. Goord, DOCS Chief Medical Officer Dr.

Lester Wright, and Gouverneur Correctional Facility ("Gouverneur C.F.") Superintendent Justin

Taylor.  (Dkt. No. 1.) Generally, Plaintiff alleges that Defendants violated his rights under the

Eighth, Ninth and Fourteenth Amendments by denying him medical treatment for, and routine

testing with regard to the progress of, his Hepatitis C medical condition because he refused, in or

around October and November of 2003, to participate in the Residential Substance Abuse

Treatment ("RSAT") Program at Gouverneur C.F.  (*See generally* Dkt. No. 1 and Exs. A-D; Dkt.

No. 29, Rebuttal Mem. of Law, ¶ 3.)  Currently before the Court is Defendants' motion for

judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).  (Dkt. No. 27.)  For the reasons that

follow, I recommend that Defendants' motion be denied, but that Plaintiff's Ninth Amendment

claim and Fourteenth Amendment claim should be *sua sponte* dismissed pursuant to the Court's

authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the

Federal Rules of Civil Procedure.

## I.      STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the

pleadings are closed . . . any party may move for judgment on the pleadings."  Fed. R. Civ. P.

12(c).  "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a

motion under Rule 12(b)(6)."[1]

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil

---

[1]     *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816 (1994) (citations omitted); *accord*, *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

Procedure for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon

which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove

no set of facts in support of his claim [that] would entitle him to relief,"[2] or the defendant must

show that the plaintiff's claim "fails as a matter of law."[3]  Thus, a defendant may base a Rule

12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the

pleading" under Rule 8(a)(2);[4] or (2) a challenge to the legal cognizability of the claim.[5]

_____

[2]       *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

[3]       *Phelps v. Kapnolis*, 308 F.3d 180, 187 (2d Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 108, n.16 [1976].)

[4]       *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[5]       *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . .  In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20,

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[6] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[7] The purpose of this rule is to "facilitate a proper decision on the merits."[8] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[9]

---

2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[6]      *See Swierkiewicz*, 534 U.S. at 511-512, 515.

[7]      *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[8]      *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[9]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").  However, even this liberal notice pleading standard "has its limits."[10]

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[11]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[12]  Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they

---

[10]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g., Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[11]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[12]     *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

suggest."[13]

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[14]  However, "all normal rules of pleading are not absolutely suspended."[15]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[16]

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings.[17]  Having said that, it should be emphasized that, on a motion to dismiss, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint

---

[13]        *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[14]        *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").  Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

[15]        *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980) (citations omitted), *accord*, *Gil v. Vogilano*, 131 F. Supp.2d 486, 491 (S.D.N.Y. 2001).

[16]        *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

[17]        *See* Fed. R. Civ. P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

(even if those documents are not attached to the complaint, if those documents are provided by

defendants in their motion to dismiss),[18] and (2) any documents provided by the plaintiff in

opposition to defendants' motion to dismiss, to the extent those documents are consistent with

the allegations in the complaint.[19]

---

[18]       *See Chambers v. Time Warner*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.*, 263, F.3d 10, 13, n.3 (2d Cir. 2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San LeandroEmergency Med. Group v. Philip Morris Co., Inc.*, 75 F.3d 801, 808 (2d Cir. 1996) (a document that is "intergral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui*, 91 F.3d 337, 341, n.1 (2d Cir. 1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint.  We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991) ("We . . . decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

[19]       "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).

**II.     ANALYSIS**

    **A.     Failure to Exhaust Administrative Remedies**

    Defendants argue that Plaintiff's action should be dismissed because his Complaint acknowledges that he failed to exhaust his available administrative remedies before filing suit in April of 2004.  (Dkt. No. 27, Part 3.)  Specifically, Defendants argue that Plaintiff's Complaint alleges that the "final result" of Plaintiff's Inmate Grievance Complaint regarding the matters in question (i.e., Grievance No. GOV-10351/03) was that the Gouverneur C.F. Inmate Grievance Resolution Committee's ("IGRC's") denial of that grievance was, on appeal, affirmed by Defendant Taylor.  (*Id*.)  Defendants argue that, through this allegation, Plaintiff implicitly concedes that he subsequently failed to appeal Defendant Taylor's decision to DOCS' Central Office Review Committee ("CORC"), as required by the Prison Litigation Reform Act of 1996. (*Id*.)  Finally, Defendants argue that, because Plaintiff had been (at the time in question) an inmate within DOCS for 26 years, it is inconceivable that he was unaware of his right to appeal to CORC (which fact was, incidentally, stated on the written decision issued by Defendant Taylor).  (*Id*.)

    Liberally construed, Plaintiff's response asserts what is, in essence, a four-prong argument.  First, he argues, it would have been "fruitless" (or futile) to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials' failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT (although Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT).  (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.)  Second, Plaintiff argues, he was not able to appeal to CORC due to the fact that he was

suffering from the effects of Hepatitis C.  (*Id*. at ¶ 3.)  Third, he argues, he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to the health effects of his Hepatitis C condition (even if that belief was, ultimately, mistaken).  (*Id*. at ¶¶ 4-5.)  Fourth, he argues, any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff, who is "a layman in matters of law."  (*Id*. at ¶¶ 1, 4-5.)

Defendants' reply asserts two arguments.  First, argue Defendants, Plaintiff's response should be disregarded because it was filed and served between 15 and 17 days late, in violation of Local Rule 7.1(b)(1), (the "return date" of Defendants' motion being December 11, 2006, the date of filing of Plaintiff's response being December 8, 2006, and the date of service of Plaintiff's response being December 11, 2006).  (Dkt. No. 28, Part 1.)  Second, argue Defendants, Plaintiff's implication that his poor health precluded him from appealing Defendant Taylor's decision to CORC during the days following that decision (on November 26, 2003) is "disingenuous at best," given that Plaintiff's health was good enough for him to file a lengthy, coherent, and typed Complaint (complete with six exhibits) five months later, in April of 2004. (*Id*.)

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[20]  DOCS has available a well-established three-step grievance program:

---

[20]     42 U.S.C. § 1997e.

> First, an inmate is to file a complaint with the Grievance Clerk.  An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue.  If there is no resolution, then the full IGRC conducts a hearing and documents the decision.  Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented.  Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.

*White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7).  Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[21]

However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 (citation omitted).  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense."  *Id.* (citations omitted).  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion

---

[21]     *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

Here, the parties' arguments raise several issues falling under Parts 1 and 3 of the above-described three-part test.[22]  I note that no issue appears to exist under Part 2 of that test since (1) Defendants have preserved their affirmative defense of non-exhaustion by raising it in their Answer (Dkt. No. 16, Part 1, ¶ 16), and (2) no allegation (or evidence) exists that any Defendant engaged in conduct that hindered or prevented Plaintiff from being able to appeal to CORC sufficient to estop that Defendant from raising this defense (*see* Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3 [arguing that it would have been "fruitless" to appeal to CORC, not that any Defendant took actions preventing Plaintiff from appealing to CORC]).

The issue that falls under Part 1 of the above-described test is created by Plaintiff's argument that it would have been futile to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials' failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT.  I reject this argument for two reasons.  First, Plaintiff confuses a prisoner's *ability* to appeal to CORC with a prisoner's *chances of success* during such an appeal.  Simply because a prisoner might not stand a realistic chance of success during an appeal does not mean that the administrative appellate process is not "available" to the prisoner.  (If so, then any prisoner with an unmeritorious or

---

[22]      I reject Defendants' argument that the Court should disregard Plaintiff's response papers as late, because of (1) Defendants' failure to show prejudice as a result of the lateness, and (2) Plaintiff's special status as a *pro se* civil rights litigant (who was, during the time in which he was supposed to file his response papers, allegedly sick).

frivolous claim would not have the administrative appellate process "available" to him.)  Second, Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT.  As a result, Plaintiff has alleged facts indicating that, in fact, it might not have been futile for him to appeal to CORC.

The issues that fall under Part 3 of the above-described test are created by Plaintiff's remaining three arguments–(1) that he was not physically able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C, (2) that he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition (even if that belief was, ultimately, mistaken), and (3) that any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff.

Taking the arguments out of order, I reject the second argument for three reasons.  First, the test in question is not whether Plaintiff "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition but whether he "reasonably" believed he was so excused (i.e., the test is an objective one, not a subjective one).  Second, Plaintiff does not allege any facts whatsoever indicating why he "reasonably" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition.  For example, Plaintiff does not allege any facts indicating that any New York State DOCS regulations were confusing.[23]  Indeed,

---

[23]     *See Giano v. Goord*, 380 F.3d 670, 676, 678-679 & n.9 (2d Cir. 2004) (it was reasonable for plaintiff to have raised his complaints through disciplinary appeals process rather than by filing a separate grievance because the relevant DOCS regulations permitted such conduct or were confusing, for example, being misinterpreted by "a learned federal district court judge not long ago"); *Hemphill v. New York Dep't of Corr. Servs.*, 380 F.3d 680, 690-691 (2d Cir. 2004) (remanding to district court to determine, *inter alia*, whether the allegedly confusing nature of New York DOCS regulations justified plaintiff's failure to file a grievance in manner that DOCS officials

the regulation in question rather clearly provides that, if mitigating circumstances exist, a prisoner may request an exception to the time limit for filing an appeal to CORC (not that he be excused from having to file an appeal to CORC). *See* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006). Third, Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC? Simply stated, I can imagine no factual circumstances, consistent with the allegations of Plaintiff's Complaint (and his response papers), in which he reasonably believed that he was excused from having to appeal to CORC due to his Hepatitis C condition.

Moreover, I reject the third argument for two reasons. First, while special leniency might be sufficient to overcome a certain lack of specificity in a pleading and/or to excuse certain minor procedural mistakes, I am aware of no authority suggesting that it is sufficient to excuse a failure to comply with a federal statute such as the PLRA.[24] Second, special leniency is normally

_____

now prescribe); *Johnson v. Testman*, 380 F.3d 691, 696-697 (2d Cir. 2004) (remanding to district court to determine, *inter alia*, "whether . . . the BOP grievance regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings.").

[24]   *See Houze v. Segarra*, 217 F. Supp.2d 394, 395-396 (S.D.N.Y. 2002) (dismissing prisoner's complaint for failure to exhaust administrative remedies, as required by PLRA, after acknowledging that prisoner, as *pro se* litigant, is afforded special leniency); *see also Smith v. Keane*, 96-CV-1629, 1998 U.S. Dist. LEXIS 3702, at *6, 9-18 (S.D.N.Y. 1998) (dismissing prisoner's complaint for failure to comply with applicable statute of limitations, after acknowledging that prisoner, as *pro se* litigant, is afforded special leniency); *Turner v. Johnson*, 177

afforded *pro se* litigants because of their *inexperience* (or lack of familiarity with legal procedures or terminology).[25]   However, here, Plaintiff has some experience,[26] especially when it comes to court actions in which he is alleged to have not exhausted his available administrative remedies prior to filing suit.[27]   Moreover, I note that Plaintiff's papers in this action have been fairly good–being organized and cogent, and often being typed, supported by exhibits, affidavits, and memorandum of law.  (*See* Dkt. Nos. 1, 2, 19, 23.)  Indeed, Plaintiff knew enough about court procedure to apply for and receive both an order dismissing the current proceeding without prejudice and an order reopening the proceeding.  (*See* Dkt. Nos. 19, 22, 23, 26.)  Clearly,

---

F.3d 390, 391-392 (5th Cir. 1999) ("[N]either a party's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits [excusing the party's failure to comply with a statute of limitations].").

[25]      *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir. 1994) (affording special leniency to "a *pro se* litigant unfamiliar with the requirements of the legal system"); *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986) (liberally construing *pro se* complaints benefits persons "unfamiliar with the lawyerlike method of pleading claims"); *Edwards v. Selsky*, 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. March 6, 2007) (Mordue, C.J., adopting Report-Recommendation of Lowe, M.J.) (stating that pro se litigants' "lack of [experience] is the reason for conferring the special status upon *pro se* litigants"); *see also Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006); *Int'l Bus. Prop. v. ITT Sheraton Corp.*, 65 F.3d 175, at *2 (9th Cir. 1995); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Zaczek v. Fauquier County*, 764 F. Supp. 1071, 1078 (E.D. Va. 1991); *Life Science Church v. U.S.*, 607 F. Supp. 1037, 1039 (N.D. Ohio 1985); John C. Rothermich, *Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice*, 67 FORDHAM L. REV. 2687, 2697 (Apr. 1999) [citing cases].

[26]      Specifically, it appears that Plaintiff has filed between two and eight state court actions or appeals.  *See*, *infra*, note 31 of this Report-Recommendation.

[27]      *Muniz v. David*, No. 96428, Memorandum and Order at 2 (N.Y. App. Div., 3d Dept., March 24, 2005) (indicating that defendants in that action had argued before the trial court, at some point before the issuance of its judgment on June 4, 2004, that Plaintiff had "failed to exhaust the administrative remedies through the available grievance procedures or establish any exceptions thereto").

Plaintiff is a litigant of at least some level of experience and sophistication.[28]  While I do not

believe that Plaintiff's experience is so extensive that it warrants altogether *revoking* the special

status normally afforded pro se civil rights litigants,[29] I believe that his experience warrants

---

[28]      When assessing a *pro se* litigant's experience for purposes of deciding whether or not
to revoke his special status, courts sometimes examine things such as (1) the quality of his pleadings
(e.g., whether they are typed, crafted in accordance with the relevant rules of civil procedure, etc.),
(2) the cogency of his motion papers (e.g., whether they are supported by applicable legal
authorities, filed in accordance with court rules, etc.), and (3) the ultimate success of any motions,
actions or appeals he has previously filed (or the failure of any motions he has previously opposed).
*See, e.g., Edwards*, 2007 WL 748442, at *3; *Rolle v. Garcia*, 04-CV-0312, 2007 WL 969576
(N.D.N.Y. March 28, 2007) (McAvoy, J.), adopting Report-Recommendation, 2007 WL 672679, at
*4 (N.D.N.Y. Feb. 28, 2007) (Lowe, M.J.); *Sledge v. Kooi*, 04-CV-1311, 2007 WL 951447, at *3-4
(N.D.N.Y. Feb. 12, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.);
*Saunders v. Ricks*, 03-CV-0598, 2006 WL 3051792, at *2 & n.11 (N.D.N.Y. Oct. 18, 2006) (Hurd,
J., adopting Report-Recommendation of Lowe, M.J.); *see also Farmer v. Haas*, 990 F.2d 319, 322
(7th Cir. 1993); *Ab v. Sekendur*, 03-CV-4723, 2004 WL 2434220, at *5 (N.D. Ill. Oct. 28, 2004).
Such a practice seems appropriate in that it is consistent with the standard often used by courts to
decide whether or not to appoint counsel to a *pro se* litigant.  *See, e.g., Hodge v. Police Officers*,
802 F.2d 58, 61 (2d Cir. 1986); *see also Tabron v. Grace*, 6 F.3d 147, 155-156 (3d Cir. 1993);
*Farmer*, 990 F.2d at 322; *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991); *Long v. Shillinger*,
927 F.2d 525, 527 (10th Cir. 1991).

[29]      *See, e.g., Johnson v. Eggersdorf*, 8 Fed. App'x 140, 143 (2d Cir. 2001) (unpublished
opinion), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.),
*adopting*, Report-Recommendation, at 1, n.1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson
v. C. Gummerson*, 201 F.3d 431, *2 (2d Cir. 1999) (unpublished opinion), *aff'g*, 97-CV-1727,
Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting*, Report-
Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31
(2d Cir. 1994); *Gill v. Pidylpchak*, 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006)
(Scullin, J., adopting report-recommendation of Treece, M.J.); *Davidson v. Talbot*, 01-CV-0473,
2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006
U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick*, 03-CV-1456, 2005
U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY*,
03-CV-0959, 2004 WL 2202594, at *3 (W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean*, 204 F.R.D.
251, 257 & n.5 (S.D.N.Y. 2001); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y.
2000); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein
v. Pitta*, 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

somewhat *diminishing* his special status.[30]   Moreover, I believe that this special leniency should

be diminished as a sanction due to his apparent lack of candor with the Court.   Specifically,

Plaintiff apparently made a material misrepresentation to the Court in his Verified Complaint,

wherein he made a sworn assertion that he had never "filed any other lawsuits in any state [or]

federal court relating to [his] imprisonment" (Dkt. No. 1, ¶ 5[a]), when, in fact, as of the date of

the signing of his Complaint (April 28, 2004), Plaintiff had apparently done so.[31]   Numerous

cases exist from within the Third Circuit for sanctioning *pro se* litigants for abusing the litigation

---

[30]     My review of the applicable law suggests that courts need not treat special status as
an "all or nothing" benefit but may confer special status to a semi-experienced *pro se* litigant on a
"sliding scale," treating the litigant more leniently than represented litigants but not as leniently as
wholly inexperienced *pro se* litigants.  *See, e.g., Kilkenny v. Greenberg Traurig, LLP*, 05-CV-6578,
2006 23399, at *18 (S.D.N.Y. Apr. 26, 2006) ("While plaintiff's *pro se* status does not insulate him
from the imposition of sanctions under Rule 11 . . .,  *pro se* litigants are held to a more lenient
standard, and the application of Rule 11 may be determined on a sliding scale according to the
litigant's level of sophistication.") [citations and internal quotation marks omitted]; *Holsey v. Bass*,
519 F. Supp. 395, 407 n.27 (D. Md. 1981) ("This Court is of the opinion that it is proper to apply a
sliding scale of liberality in construing a *pro se* complaint.") [citation omitted]; *see also* Julie M.
Bradlow, *Procedural Due Process Rights of Pro se Civil Litigants*, 55 U. CHI. L. REV. 659, 660
(Spring 1988) (asserting that, in *pro se* civil litigation, a "sliding scale" of due process should be
employed by judges to ensure that they give "such leniency and special attention as the particular
case merits").

[31]     *See, e.g., Efraim Muniz v. David*, No. 96428, Memorandum and Order (N.Y. App.
Div., 3d Dept., March 24, 2005) (stating, "This proceeding was commenced in October 2003").  I
note that the plaintiff in the aforementioned prisoner action--"Efraim Muniz" of Governor C.F.--
bears the same name of record as the prisoner of record bearing New York State DOCS Inmate
Number 80-A-0959, the inmate number claimed by Plaintiff in the current action.  I note also that,
according to the New York DOCS Inmate Locator System, no other prisoner in the New York State
DOCS has ever been named "Efraim Muniz."  In other words, either the DOCS Inmate Locator
System contains a typographical error for Plaintiff's record entry or Plaintiff answers to both names.
     Finally, I note that it is unclear whether several other prisoner actions and appeals were also
brought by Plaintiff or the one other "Efrain Muniz" who has ever been incarcerated by the New
York State DOCS.  *See, e.g., Efrain J. Muniz v. N.Y.S. Div. of Parole*, 695 N.Y.S.2d 619 (N.Y. App.
Div., 3d Dept., 1999); *Efrain Muniz v. Selsky*, No. 91967, Memorandum and Judgment (N.Y. App.
Div., 3d Dept., Jan. 9, 2003); *Efrain J. Muniz v. Goord*, 820 N.Y.S.2d 368 (N.Y. App. Div., 3d
Dept., 2006).

process, as well as some cases from within the Second Circuit.[32]

Finally, I am skeptical of the first arguments for two reasons.  First, Plaintiff does not allege specific facts indicating why he was not able (presumably, physically able) to file an appeal to CORC during the days or weeks following November 26, 2003.  (For example, was it because he did not have the strength to think clearly or write, or was it because he did not have access to paper and legal materials for some reason?  Was he housed in the prison's infirmary during this time period, and how long was he allegedly incapacitated?)  I note that Plaintiff's allegation that he was unable to file an appeal to CORC during the days or weeks following November 26, 2003, appears undermined somewhat by Exhibit C to his Complaint, which indicates that, on January 12, 2004 (approximately six weeks after November 26, 2003), Plaintiff was in a good enough physical condition to write a letter to a DOCS official (apparently Brenda Tracy, a Nurse Administrator), regarding a doctor's decision to not prescribe vitamins for Plaintiff.  (Dkt. No. 1, Ex. C.)[33]  Second, Plaintiff does not allege facts indicating why he did not, or was not able to, request an exception to the time limit for filing an appeal to CORC due to the "mitigating circumstances" created by his illness (and then, if necessary, file a separate grievance

---

[32]     See, e.g., Iwachiw v. N.Y.S. Dept. of Motor Veh., 396 F.3d at 528-529 & n.1 (2d Cir. 2005); McDonald v. Head Crim. Ct. Supervis. Officer, 850 F.2d 121, 124-125 (2d Cir. 1988); Mora v. Bockelmann, 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); Mitchell v. Harriman, 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); Tibbetts v. Robinson, 97-CV-2682, 2005 WL 2146079, at *7 (D. Conn. Aug. 31, 2005).

[33]     However, I am not persuaded by Defendants' argument that Plaintiff must have been physically able to file an appeal to CORC during the days or weeks following November 26, 2003, because Plaintiff was able to file his Complaint in this action approximately five months later, in April of 2004.  Setting aside the issue of whether the Court's consideration of such a fact would arguably necessitate converting Defendants' motion into a motion for summary judgment, I note the lengthy time lag between the two dates.

regarding any denial of that request for an exception).  *See* DOCS Directive No. 4040 § V(A)(1)

(Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R.

§ 701.7[a], which was repealed and amended on June 28, 2006).

        However, despite this skepticism about Plaintiff's first argument, I am reluctant to

recommend dismissal of Plaintiff's Complaint based on a failure to exhaust his administrative

remedies.  Specifically, I am mindful of how low the pleading standard is under Rules 8 and 12

of the Federal Rules of Civil Procedure and various Supreme Court precedents.  *See*, *supra*, Part I

of this Report-Recommendation.  Morever, I am mindful that, within the Second Circuit, "it may

often be premature to decide the issue of exhaustion in the context of a motion to dismiss the

complaint under Rule 12(b)(6); rather it may be necessary for the Court to address the issue at the

summary judgment stage."  *Flynn v. Wright*, 05-CV-1488, 2007 WL 241332, at \*12 (S.D.N.Y.

Jan. 26, 2007) (citing *Ziemba v. Wezner*, 366 F.3d 161, 163-164 [2d Cir. 2004] [vacating

magistrate judge's granting of defendants' motion for judgment on pleadings for failing to

exhaust administrative remedies]).[34]  Finally, I am mindful that, recently, the Supreme Court

expressed disapproval of dismissing prisoner actions for failure to exhaust administrative

remedies under a Rule 12(b)(6) analysis.  *See Jones v. Block*, 127 S.Ct. 910, 919-923 (2007).

        More specifically, I find that Plaintiff's assertions, in his response papers,[35] that, in light

---

[34]        *Accord*, *Larkins v. Selsky*, 04-CV-5900, 2006 WL 3548959, at \*8 (S.D.N.Y. Dec. 6,
2006).

[35]        "Generally, a court may not look outside the pleadings when reviewing a Rule
12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously
makes it appropriate to consider plaintiff's additional materials, such as his opposition
memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov. 17,
1997) (citing, *inter alia*, *Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's
response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is

of his Hepatitis C condition, he "did the very best [his] ability and health allowed [him] at the time" to grieve the matters at issue in this action "plausibly alleges" the existence of "special circumstances" justifying his failure to appeal to CORC (as permitted by *Hemphill v. State of New York*, 380 F.3d 680 [2d Cir. 2004] and its companion cases), and meets--albeit *barely*--the "modest" pleading threshold set by Rules 8 and 12 of the Federal Rules of Civil Procedure and Supreme Court precedent such as *Jones v. Block*, 127 S.Ct. 910 (2007), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002), and *Leatherman v. Tarrant County Narc. and Intell. Coord. Unit*, 507 U.S. 163 (1993). I note that at least one analogous case exists, from within the Second Circuit, in which a prisoner was found to have plausibly alleged special circumstances due to physical incapacitation.[36]

As a result, I recommend that the Court deny Defendants' motion for judgment on the pleadings. However, I express no opinion about whether Plaintiff would or would not be able to

---

faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'" *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not. *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

[36]    *See Barad v. Comstock*, 03-CV-0736, 2005 U.S. Dist. LEXIS 38418, at *10-11, 16-17, 21-23 (W.D.N.Y. June 30, 2005) (prisoner plausibly alleged special circumstances where he alleged, in part, that time to commence grievance had lapsed while he had been hospitalized due to kidney stones, although his complaint was ultimately dismissed under a summary judgment analysis); *cf. Bonilla v. Janovick*, 01-CV-3988, 2005 U.S. Dist. LEXIS 325, at *6-7 (E.D.N.Y. Jan. 7, 2005) ("[P]laintiff's hospitalization and physical injuries may have prevented the filing of an administrative complaint, [necessitating] further discovery and additional depositions . . . to determine whether the admitted failure to exhaust should nevertheless be excused [due to the 'special circumstances' exception]."

survive a motion for *summary judgment* (premised on a failure to exhaust administrative remedies), should Defendants choose to file such a motion.[37]

**B.       Duty of Court to *Sua Sponte* Analyze Pleading Sufficiency of Claims**

An analysis of Defendants' failure-to-exhaust argument does not end the Court's review of Plaintiff's claims.  This is because, under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Court has the authority (and duty) to *sua sponte* dismiss prisoner claims that fail to state a claim upon which relief may be granted or over which the Court lacks subject-matter jurisdiction.  As a result, I will analyze Plaintiff's Eight, Ninth and Fourteenth Amendment claims for such defects.

**1.       Failure to State a Claim Under the Eighth Amendment**

Generally, to state a claim of inadequate medical care under the Eighth Amendment, Plaintiff must allege facts indicating two things: (1) that he had a sufficiently serious medical need; and (2) that Defendants were deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  With regard to the second element, an official is "deliberately indifferent" (in other words, he has

_____

[37]       *See Barad*, 2005 U.S. Dist. LEXIS 38418, at *21, 22, 25 (during summary judgment analysis, accepting defendants' argument that plaintiff "was physically able to file a grievance" during his fourteen-day hospitalization due to kidney stones because "plaintiff testified that he was able to write [and attend a program] during his hospitalization," although ultimately finding that plaintiff had established other special circumstances, i.e., [1] that the correctional facility's medical staff had erroneously told plaintiff that his time to commence a grievance had lapsed, and [2] that plaintiff had relied on Second Circuit law at that time [in 1999] which did not require exhaustion of administrative remedies for such deliberate indifference claims); *cf. Goldenberg v. St. Barnabas Hosp.*, 01-CV-7435, 2005 U.S. Dist. LEXIS 2730, at *11-16 (S.D.N.Y. Feb. 22, 2005) (granting defendants' motion for summary judgment, in part because plaintiff adduced no evidence in support of his claim that administrative remedies were not "available" to him [i.e., during an analysis of Part 1 of the Second Circuit's three-part test] insofar as he was, during the relevant time period, in a physically and mentally debilitated state).

20

a sufficiently culpable state of mind) when he "'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir.2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 [1994]).

Here, I will assume for the sake of argument that Plaintiff's Hepatitis C condition constitutes a "serious medical need" for purposes of the Eighth Amendment.[38] The more problematic question is whether Plaintiff has alleged facts indicating the sort of culpable state of mind (which is akin to criminal recklessness) necessary for liability under the Eighth Amendment.[39] It is arguable that he has simply alleged facts indicating a disagreement with his prescribed medical care, or perhaps negligence, neither of which is enough to make a defendant liable to a plaintiff under the Eighth Amendment.[40] For example, the documents relied on and/or

_____

[38]    Some district court decisions from within the Second Circuit have found Hepatitis C to not constitute a serious medical need. *See Vondette v. McDonald*, 00-CV-6874, 2001 WL 1551152, at *4-5 (S.D.N.Y. Dec. 5, 2001). However, it appears that the bulk of district court decisions addressing the issue finds that Hepatitis C is a serious medical need. *See Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

[39]    "'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.'" *Evering v. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]).

[40]    *See Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance*, 143 F.3d at 703 ("It is well-established that mere

referenced in Plaintiff's Complaint (and thus deemed part of Plaintiff's Complaint) *appear* to

suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, it was not

deemed medically appropriate for Plaintiff to engage in such medical treatment without having

first enrolled in the RSAT Program, due to the increased risk of liver damage.[41]  If those

documents more clearly indicated a medical rationale for the requirement that Plaintiff participate

in the RSAT Program, I would be inclined to conclude that Plaintiff has not alleged facts

indicating a violation of the Eighth Amendment.[42]  However, they do not do so.  Moreover,

again, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal

Rules of Civil Procedure.  I am also mindful that, unlike many similar cases brought by

prisoners, Plaintiff alleges not only a denial of treatment for Hepatitis C but of *testing* for the

progress of that disease (which denial appears to be more difficult to justify under the rationale

---

disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

[41]      (*See* Dkt. No. 1, Ex. A2 ["[T]he facility is acting in accordance with direction provided by Central Office.  The policy regarding Hepatitis C Treatment/Substance Abuse Treatment is addressed in a memorandum dated January 8, 2002, which states in part: 'Any inmate who is diagnosed with Hepatitis C and requires medical treatment must have completed or have enrolled in an Alcohol Substance Abuse Treatment, Comprehensive Alcohol Substance Abuse Treatment, Resident Substance Abuse Treatment, or Pre-Treatment Workbook Program . . . ."]; Dkt. No. 1, Ex. D ["While to the general public hepatitis is simply a disease, the medical community views it more accurately as an inflamed liver. . . .  Most new [Hepatitis C] infections are caused by intravenous drug use.  Disease progression can . . . occur more often if the person drinks alcohol."].)

[42]      *See Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *13-15 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (finding that prisoner's Eighth Amendment claim regarding denial of hepatitis treatment based on his non-participation in ASAT program should be dismissed on alternative ground that he failed to state a claim, given that the documents attached to prisoner's complaint and response papers clearly indicated that, at the time, it was not deemed medically appropriate for the plaintiff to engage in medical treatment for Hepatitis C without having first enrolled in the ASAT Program).

apparently proffered in Exhibits A2 and D to Plaintiff's Complaint).

As a result, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to state an Eighth Amendment claim under the circumstances.[43]  However, again, I express no opinion about whether Plaintiff would or would not be able to survive a motion for summary judgment (with respect to his Eighth Amendment claim), should Defendants choose to file such a motion.  *See Lewis v. Alves*, 01-CV-0640, 2004 WL 941532, at *5-7 (W.D.N.Y. March 22, 2004) (granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim alleging, *inter alia*, deliberate indifference to plaintiff's Hepatitis C condition due to his non-participation in an ASAT Program), *accord*, *Rose v. Alves*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *cf. Graham v. Wright*, 01-CV-9613, 2003 U.S. Dist. LEXIS 16106, at *6 n.5 (S.D.N.Y. Sept. 12, 2003) ("[W]e note that the portions of the [DOCS] Guidelines challenged by plaintiff, namely that the inmate must successfully complete an ASAT program . . . [before he receives treatment for Hepatitis C] appear to be highly rational in light of the fact that severe side effects, including death, may result from treatment of the patient with interferon-apha-2b or 2a combined with ribavirin for 6-12 months, and that active

---

[43]     *See McKenna v. Wright*, 386 F.3d 432, 434, 437 (2d. Cir. 2004) (prisoner stated Eighth Amendment claim for deliberate indifference to his Hepatitis C based on his non-participation in ASAT program where he alleged that he had been deemed "ineligible for the [ASAT] program because of his medical condition"); *Hatzfield v. Goord*, 04-CV-0159, 2007 WL 700961, at *1-5 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.) (prisoner stated First, Eighth and Fourteenth Amendment claims with regard to defendants' failure to treat his Hepatitis C condition based on his non-participation in RSAT/ASAT program where he alleged that his participation in the RSAT/ASAT program would have violated his religious beliefs); *Hilton v. Wright*, 235 F.R.D. 40, 44-55 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) (assuming, without specifically deciding, that class of prisoners had stated a viable Section 1983 claim regarding DOCS' policy of requiring prisoners' participation in ASAT/RSAT program before prisoners could receive treatment for Hepatitis C).

substance abuse, including alcohol abuse, can cause life threatening consequences to a patient following the treatment regimen.").

### 2.      Failure to State a Claim Under the Ninth Amendment

In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia*, the Ninth Amendment.  (Dkt. No. 1, ¶ 7.3.)  The Ninth Amendment to the United States Constitution provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const., amend. IX.  I can find no factual allegations in Plaintiff's Complaint in support of his Ninth Amendment claim.  (*See generally* Dkt. Nos. 1, 29.)  Moreover, I can imagine no set of factual circumstances, consistent with the allegations of Plaintiff's Complaint, in which such a Ninth Amendment claim might exist.  (*Id*.)  As explained by the Tenth Circuit:

> Although the Ninth Amendment may restrict the activities of state actors . . . , it has never been applied to prevent the denial of medical treatment to prisoners.  Indeed, such an application would be inappropriate, since the Ninth Amendment only protects those rights not otherwise 'enumerat[ed] in the Constitution,' . . . and the Eighth Amendment specifically addresses itself to the mistreatment of prisoners . . . .

*Parnisi v. Colo. State Hosp.*, No. 92-1368, 1993 U.S. App. LEXIS 9128, at *2, 4-5 (10th Cir. Apr. 15, 1993) (affirming district court's dismissal of prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment) [citations omitted].[44]  Courts from within the Second Circuit have similarly recognized the inapplicability of the Ninth Amendment to prisoner

---

[44]      *See also Taylor v. Roper*, 83 F. App'x 142, 143 (8th Cir. 2003) ("We also agree with the district court that [the prisoner's] allegations [regarding inadequate medical care] provided no basis for his claims . . . under . . . the Ninth Amendment . . . ."); *Gaberhart v. Chapleau*, No. 96-5050, 1997 U.S. App. LEXIS 6617, at *3 (6th Cir. Apr. 4, 1997) (dismissing the prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment, in part because he "never explained the theory or at least the basis" for that claim).

Section 1983 claims. *See*, *e.g.*, *Diaz v. City of New York*, 00-CV-2944, 2006 U.S. Dist. LEXIS 93923, at *21-22 (E.D.N.Y. Dec. 29, 2006) ("[T]he Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.") [internal quotation marks and citations omitted], *accord*, *Bussey v, Phillips*, 419 F. Supp.2d 569, 586 (S.D.N.Y. 2006) [citing case].

The closest that Plaintiff comes to stating such a Ninth Amendment claim is when he alleges that prisoners are being "denied mental health services for Hapatitis C[-]related mental <u>disturbances</u> and anxiety," and that their "confidentiality is being violated."  (Dkt. No. 1, "Third Cause of Action." [emphasis in original].)  Granted, the Ninth Amendment may, in some circumstances, protect the disclosure of some personal information about a prisoner (e.g., regarding the prisoner's mental health).  *See Morgan v. Rowland*, 01-CV-1107, 2006 U.S. Dist. LEXIS 11081, at *28-30 (D. Conn. March 17, 2006) (granting defendants' motion for summary judgment with regard to such a claim); *see also Hunnictt v. Armstrong*, 152 F. App'x 34 (2d Cir. 2005) (unpublished decision), *vacating in part*, 305 F. Supp.2d 175, 187-188 (D. Conn. 2004) (presuming that prisoner was not alleging Ninth Amendment right-to-privacy claim).[45]  However, again, Plaintiff asserts no factual allegations in support of this claim.  For example, Plaintiff does not allege any facts indicating that Defendants discussed Plaintiff's private or personal mental

---

[45]      *But see In re State Police Litig.*, 888 F. Supp. 1235, 1258 (D. Conn. 1995) ("[T]he [Ninth] [A]mendment does not guarantee any constitutional right [e.g., to privacy] sufficient to support a claim under 42 U.S.C. § 1983.") [citations omitted], *appeal dismissed*, 88 F.3d 127 (2d Cir. 1996); *accord*, *Salaman v. Bullock*, 05-CV-0876, 2007 U.S. Dist. LEXIS 24432, at *8 (D. Conn. March 15, 2007), *DeLeon v. Little*, 981 F. Supp. 728, 734 (D. Conn. 1997), *Doe v. Episcopal Soc. Servs.*, 94-CV-9171, 1996 U.S. Dist. LEXIS 1278, at *3-4 (S.D.N.Y. Feb. 7, 1996).

health issues in front of other prisoners and DOCS employees, violating either the psychiatrist-patient privilege or psychologist-patient privilege.  (*See generally* Dkt. Nos. 1, 29.)  Furthermore, Plaintiff's request to litigate this matter as a class action was denied; thus, it is not relevant, *for purposes of this action*, what wrongs *other* prisoners (especially unidentified prisoners) are allegedly experiencing.

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Ninth Amendment claim.  However, because the defect in any right-to-privacy claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such right-to-privacy claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable Ninth Amendment claim within 30 days of the Court's final decision on Defendants' motion.

### 3.    Failure to State a Claim Under the Fourteenth Amendment

In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia*, the Fourteenth Amendment.  (Dkt. No. 1, ¶ 7.3.)  Assuming that Plaintiff is not simply relying on the Fourteenth Amendment to the extent that it makes the Eighth Amendment applicable to the states, the only conceivable claims to which Plaintiff might be referring are his claims for a violation of his right to substantive due process, procedural due process, or equal protection.  However, I can find no factual allegations in support of any such claims.

Specifically, to the extent that Plaintiff is attempting to assert some sort of due process claim, any such claim is in actuality an Eighth Amendment claim, which I have already analyzed above in Part II.B.1. of this Report-Recommendation.  *See Hatzfield v. Goord*, 04-CV-0159, 2007 WL 700961, at *1 n.3 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-

Recommendation of Homer, M.J.) (citing *Pabon v. Wright*, 459 F.3d 241, 253 [2d Cir. 2006]); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *9 (S.D.N.Y. March 4, 2002).

To the extent that Plaintiff is attempting to assert some sort of equal protection claim, he has not alleged facts indicating that either (1) he was treated differently than other people in similar circumstances or (2) the unequal treatment was the result of intentional and purposeful discrimination. *See*, *e.g.*, *Verley*, 2004 WL 526740, at *20-21; *McKenna*, 2002 WL 338375, at *10-12. Furthermore, to the extent that Plaintiff is somehow implicitly alleging that he was treated differently than persons suffering from cancer or AIDS, I note that, as stated earlier, the exhibits to Plaintiff's own Complaint appear to suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, he was being denied such treatment because of the possible damage such treatment would do to his liver (which was already being affected by Hepatitis C) if he was currently abusing alcohol or drugs.[46]

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Fourteenth Amendment claim. However, because the defect in any equal protection claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such equal protection claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable equal protection claim within 30 days of the Court's final decision on Defendants' motion.

### 4.   Lack of Personal Involvement

"'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d

---

[46]      *See*, *supra*, note 41 of this Report-Recommendation.

Cir.1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 [2d Cir.1991]).[47]  In order to

prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show

some tangible connection between the alleged unlawful conduct and the defendant.[48]  If the

defendant is a supervisory official, such as a DOCS Commissioner or correctional facility

superintendent, a mere "linkage" to the unlawful conduct through "the prison chain of command"

(i.e., under the doctrine of *respondeat superior*) is insufficient to show his or her personal

involvement in that unlawful conduct.[49]  In other words, supervisory officials may not be held

liable merely because they held a position of authority.[50]  Rather, supervisory personnel may be

considered "personally involved" only if they (1) directly participated in the violation,

(2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or

allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly

negligent in managing subordinates who caused the violation, or (5) exhibited deliberate

indifference to the rights of inmates by failing to act on information indicating that the violation

was occurring.[51]

      Here, liberally construed, Plaintiff's Complaint alleges that Defendant Goord (the DOCS

---

[47]    *Accord, McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087 (1978).

[48]    *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

[49]    *Polk County v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501; *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

[50]    *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996).

[51]    *Richardson*, 347 F.3d at 435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) [citations omitted].

28

Commissioner) and Defendant Wright (the DOCS Chief Medical Officer) approved and allowed the current policy of forced participation in RSAT prior to receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.)  More specifically, Plaintiff has alleged that Defendants Goord and Wright created an unconstitutional policy, or at least knowingly allowed such a policy to continue.  (*Id*.)  For these reasons, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to allege facts indicating the personal involvement of Defendants Goord and Wright in the constitutional violation(s) alleged.  *See*, *e.g.*, *Hatzfield*, 2007 WL 700961, at *3.

However, the same cannot be said of Plaintiff's allegations against Defendant Taylor. Plaintiff alleges that Defendant Taylor (the Gouverneur C.F. Superintendent) violated his constitutional rights when he affirmed the IGRC's denial of Plaintiff's grievance and upheld the policy of forced participation in RSAT before receiving treatment for Hepatitis C.  (Dkt. No. 1, ¶ 4.b. & Exs. A, A1, A2.)  Two problems exist with regard to Plaintiff's claim(s) against Defendant Taylor.

First, the documents attached to Plaintiff's Complaint (and thus incorporated into that Complaint, *see* Fed. R. Civ. P. 10[c]) indicate that it was not Defendant Justin Taylor but someone else (either a deputy superintendent or an acting superintendent) who personally affirmed the IGRC's denial of Plaintiff's grievance.  (Dkt. No. 1, Ex. A.2.)  It is well-established that when a "supervisory official like [a] . . . prison [s]uperintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable."  *Walker v. Pataro*, 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002), *accord*, *Hatzfield*, 2007 WL 700961, at *3; *Ramos v. Artuz*, 00-CV-

0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001).  "Thus, receipt of the grievance alone, without more, cannot suffice to allege personal involvement." *Hatzfield*, 2007 WL 700961, at *3.

Second, even if Defendant Taylor had personally affirmed the IGRC's decision, a fair reading of the Complaint reveals that Plaintiff is alleging that the policy of denying medical treatment for Hepatitis C was DOCS-wide rather than Gouverneur C.F.-specific.  (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.)  "There can be, therefore, no claim that [the superintendent] either created the policy [denying medical treatment for Hepatitis C] or allowed it to continue as there is no allegation that he had the power to create or to terminate the policy." *Hatzfield*, 2007 WL 700961, at *3; *see also Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *15-16 (S.D.N.Y. Jan. 23, 2004) (dismissing similar claims against prison superintendent based on failure to allege facts indicating personal involvement).

The closest Plaintiff comes to involving Defendant Taylor in the constitutional violations alleged is when Plaintiff alleges not simply a denial of medical *treatment* for his Hepatitis C condition but a denial of routine *testing* with regard to the progression of his Hepatitis C condition.  Specifically, Plaintiff alleges that "routine testing" of Hepatitis C in "numerous inmates" is not being conducted by "medical staff" at Gouvernuer C.F.  (Dkt. No. 1, ¶ 6[c].)  The problem is that this claim of a denial-of-testing was not raised in the grievance that Plaintiff appealed to Defendant Taylor.  (Dkt. No. 1, Ex. A.)  Thus, there are no factual allegations indicating that Defendant Taylor either knew of the practice in question or that he allowed it to continue.  However, it is conceivable to me that Plaintiff *might* be able to assert such factual allegations.  *See*, *e.g*, *Johnson v. Wright*, 234 F. Supp.2d 352, 364 (S.D.N.Y. 2002).

As a result, I recommend that Plaintiff's claims against Defendant Taylor should be dismissed *sua sponte*. However, because the defect in Plaintiff's denial-of-testing claim against Defendant Taylor appears to be formal instead of substantive, I recommend that the dismissal of that claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable such claim within 30 days of the Court's final decision on Defendants' motion.

### 5.    Mootness

Plaintiff alleges that, on February 10, 2006 (after Plaintiff filed his Complaint on April 28, 2004), DOCS and Defendant Wright rescinded its policy of requiring that a prisoner participate in an ASAT/RSAT Program before receiving treatment for Hepatitis C. (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.)[52]

This factual allegation is significant because, as the relief requested in this action, Plaintiff seeks (1) "[i]mmediate comprehensive multi-vitamin treatment for those inmates that find themselves lacking the strength or ability to function normally due to their illness," (2) "[i]mmediate laboratory testing, and liver biopsies, etc . . . to determine [the] stage of their illness, in accordance with Federal and National Institute of Health [requirements]," and (3) "[u]pon determination and diagnosis of the illness, immediate commencement of treatment without regard[] to any DOCS recommended program(s)." (Dkt. No. 1, ¶ 9.) In other words, Plaintiff does not seek any monetary relief. (*Id*.)

However, given the Court's rather recent decision in *Wilton v. Wright*, 235 F.R.D. 40

---

[52]    I note that, apparently, this decision was made as early as October 13, 2005. *See Hilton v. Wright*, 235 F.R.D. 40, 46 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) ("On October 13, 2005, Dr. Wright rescinded the ASAT/RSAT requirement from the [DOCS' Hepatitis C Primary Care Practice] Guideline.").

(N.D.N.Y. 2006) (Hurd, J.) (rejecting defendants' mootness argument under somewhat analogous circumstances), I am unable to conclude, without briefing by Defendants (and perhaps the occurrence of discovery), that Plaintiff's claims are mooted by DOCS' apparent decision to rescind the policy in question after Plaintiff filed suit. I note, however, that *Wilson* appears to be somewhat distinguishable from the instant case in that (1) the claims in *Wilson* were brought by a class of prisoners (including prisoners affected in the future), unlike the claims in this case, and (2) in any event, the plaintiffs in *Wilson* sought monetary relief in addition to injunctive relief, unlike Plaintiff in this case.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 27) be **DENIED**; and it is

**RECOMMENDED** that, pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure,

(1) Plaintiff's Ninth Amendment inadequate-medical-care claim and Fourteenth Amendment due process claim be *sua sponte* **DISMISSED with prejudice**,

(2) Plaintiff's Ninth Amendment right-to-privacy claim and his Fourteenth Amendment equal protection claim be *sua sponte* **DISMISSED conditionally**, i.e., if Plaintiff fails to file an Amended Complaint asserting a viable right-to-privacy claim and equal protection claim within 30 days of the Court's final decision on Defendants' motion, and

(3) Plaintiff's claims against Defendant Taylor be *sua sponte* **DISMISSED with prejudice** except his denial-of-testing claim, which should be *sua sponte* **DISMISSED conditionally**, i.e., on the same condition as mentioned above; and it is

32

**ORDERED** that the Clerk's Office shall serve a copy of this Report-Recommendation on Plaintiff at his address of record in this action (listed in the caption on the docket) and **also** at his apparent actual current address (listed on Dkt. No. 27, Part 4, Dkt. No. 28, and Dkt. No. 29, Part 2, as well as on the New York State DOCS Inmate Locator System), which is **Oneida Correctional Facility, 6100 School Road, Rome, NY 13440.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 2, 2007
　　　　Syracuse, New York


George H. Lowe
United States Magistrate Judge