UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

EFRAIN J. MUNIZ,

                          Plaintiff,

     -v.-                                                      9:04-CV-0479
                                                              (TJM/GHL)

GLENN S. GOORD, Commissioner of Correctional
Services (DOCS); and DR. LESTER WRIGHT,
Deputy Commissioner, Chief Medical Officer;

                          Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

EFRAIN J. MUNIZ, 80-A-0959
   Plaintiff, *Pro Se*
Oneida Correctional Facility
P.O. Box 4580
Rome, NY 13442-4580

HON. ANDREW M. CUOMO                                  STEVEN H. SCHWARTZ, ESQ.
Attorney General for the State of New York            Assistant Attorney General
   Counsel for Defendants
The Capitol
Albany, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This action has been referred to me for Report and Recommendation by the Honorable

Thomas J. McAvoy, Senior United States District Judge, pursuant to Local Rule 72.3(c) and 28

U.S.C. § 636(b).  Efrain J. Muniz ("Plaintiff") commenced this *pro se* civil rights action pursuant

to 42 U.S.C. § 1983 against three employees of the New York State Department of Correctional

Services ("DOCS")–DOCS Commissioner Glenn S. Goord, DOCS Chief Medical Officer Dr.

Lester Wright, and Gouverneur Correctional Facility ("Gouverneur C.F.") Superintendent Justin

Taylor.  (Dkt. No. 1.)  Generally, Plaintiff's Complaint alleges that Defendants violated his rights

under the Eighth, Ninth and Fourteenth Amendments by denying him medical treatment for, and

routine testing with regard to the progress of, his Hepatitis C medical condition because he

refused, in or around October and November of 2003, to participate in the Residential Substance

Abuse Treatment ("RSAT") Program at Gouverneur C.F.  (*See generally* Dkt. No. 1 and Exs. A-

D.)  On July 11, 2007, Judge McAvoy issued a Decision and Order dismissing Plaintiff's claims

asserted under the Ninth and Fourteenth Amendments, and his claims asserted against Defendant

Taylor.  (Dkt. No. 31.)  Currently before the Court is Defendants' motion for summary judgment

with regard to Plaintiff's remaining claims, specifically, his Eighth Amendment claims against

Defendants Goord and Wright.  (Dkt. No. 27.)  For the reasons that follow, I recommend that

Defendants' motion be granted.

## I.    LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of

material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences

against the moving party.[2]

---

[1]        A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]        *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted];
*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[3]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[4]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

Moreover, it is important to note that, where a plaintiff has failed to properly respond[6] to a defendant's statement of material facts, contained in its Statement of Material Facts (a/k/a its

---

[3]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff].");  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[4]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .");  *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[5]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted; emphasis added].

[6]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party shall file a response to the Statement of Material Facts.  The non-movant's response shall mirror the movant's Statements of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.").

3

"Rule 7.1 Statement"), the facts as set forth in that Rule 7.1 Statement will be accepted as true[7] to

the extent that (1) those facts are supported by the evidence in the record,[8] and (2) the non-

moving party, if he is proceeding *pro se*, has been specifically advised of the potential

consequences of failing to respond to the movant's motion for summary judgment.[9]  Here,

Plaintiff was so advised by Defendants on or about October 11, 2007.  (Dkt. No. 35, Part 1, at 2

---

[7]      *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>") [emphasis in original].

[8]      *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . .  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

[9]      *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

4

[Defendants' Notice of Motion].)  I note that Plaintiff indicated he was aware of these potential consequences when he informed the Court he had received Defendants' motion and he requested (and was granted) an extension of the response-filing-deadline.  (Dkt. No. 36.)  Nonetheless, Plaintiff has failed to file any Response whatsoever to Defendants' Rule 7.1 Statement.  (*See* Dkt. No. 37.)

Where a non-movant fails to adequately oppose a properly supported factual assertion made in a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[10]  In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[11]  (Here, I note that Plaintiffs' Complaint contains a verification pursuant to 28 U.S.C. § 1746.[12])  In any event, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must,

---

[10]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[11]     *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[12]     (Dkt. No. 1.)

among other things, not be conclusory.[13]  An affidavit is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[14]  Finally, even where an affidavit (or verified

complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1)

"largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies

and improbabilities that no reasonable juror would undertake the suspension of disbelief

necessary to credit the allegations made in the complaint."[15]

---

[13]        See Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); Patterson, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; Applegate v. Top Assoc., 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[14]        See, e.g., Bickerstaff v. Vassar Oil, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; West-Fair Elec. Contractors v. Aetna Cas. & Sur., 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), cert. denied, 474 U.S. 829 (1985); Applegate, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[15]        See, e.g., Jeffreys v. City of New York, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; Argus, Inc. v. Eastman Kodak Co., 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); Allah v. Greiner, 03-CV-3789,

6

## II.    SUMMARY OF PARTIES' LEGAL ARGUMENTS

Defendants move for dismissal of Plaintiff's remaining claims against Defendants Goord

and Wright on one ground: Plaintiff has failed to adduce sufficient record evidence establishing

that he exhausted his available administrative remedies before filing this suit.  (Dkt. No. 35, Part

6, at 2-3 [Defs.' Memo. of Law].)[16]  More specifically, Defendants argue as follows: (1) Plaintiff

admits that he did not appeal Superintendent Taylor's denial of his grievance to DOCS' Central

Office Review Committee ("CORC"); (2) in order to so appeal Superintendent Taylor's written

decision (affirming the denial of his grievance), all Plaintiff had to do was sign his name at the

bottom of that written decision; and (3) Defendants have adduced evidence establishing that,

---

2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit Local Rule § 0.23).

[16]       I note that, in addition to expressly leaving open the issue of whether Plaintiff's
claims against Defendants Goord and Wright should be dismissed under Fed. R. Civ. P. 56 on
the ground of a failure to exhaust Plaintiff's available administrative remedies, my Report-
Recommendation of May 2, 2007, also expressly left open the question of whether those claims
should be dismissed under Fed. R. Civ. P. 56 on the ground of a failure to establish an exhibition
of deliberate indifference by Defendants Goord and Wright to any serious medical need.  (*See*
Dkt. No. 30, at 19-20, 23-24.)  My previous Report-Recommendation also implicitly left open
the issue of whether Plaintiff's claims against Defendants Goord and Wright should be dismissed
under Fed. R. Civ. P. 56 on the grounds of lack of personal involvement and mootness.  (*Id*. at
27-32.)

during the three weeks following Plaintiff's receipt of Superintendent Taylor's written decision (dated November 26, 2003), Plaintiff was physically able to (but failed to) sign his name at the bottom of that decision.  (*Id*; *see also* Dkt. No. 35, Part 3, ¶¶ 1-7 [Defs.' Rule 7.1 Statement].)

Liberally construed, Plaintiff's response asserts what is, in essence, a three-pronged argument.[17]  First, he argues, he was so nauseated, feverish and weak due to the adverse side effects of the medications he was taking to treat his Hepatitis C condition that he was *physically* unable to sign his name on the bottom of the Superintendent's decision during the time in question.  (Dkt. No. 37, at 2-3 [Plf.'s Opp. Papers].)  Second, he argues, he was so weak, tired and confused due to the adverse side effects of the medications he was taking  to treat his Hepatitis C condition that he was *psychologically* unable to understand that he was required to sign his name on the bottom of the Superintendent's decision during the time in question in order to exhaust his administrative remedies.  (*Id*.)  Third, he argues, the failure to appeal to CORC was merely a "technical mistake[]" that should be excused due to (1) the special leniency that is to be afforded *pro se* litigants such as Plaintiff and (2) the obvious merit that his claim possesses.  (*Id*. at 3.)

## III.     ANALYSIS

### A.     Three-Part Inquiry Governing Exhaustion Defense in Second Circuit

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall

---

[17]     I note that this three-pronged argument is similar but not identical to the argument Plaintiff asserted in responding to Defendants' motion to dismiss for failure to state a claim.  (*See* Dkt. No. 30, at 8-9 [Report-Recommendation of May 2, 2007, summarizing Plaintiff's argument in response to Defendants' motion to dismiss].)

be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[18]  DOCS has available a well-established three-step grievance program:

> First, an inmate is to file a complaint with the Grievance Clerk.  An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue.  If there is no resolution, then the full IGRC conducts a hearing and documents the decision.  Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented.  Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.

*White v. The State of New York*, 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002) [citation omitted].  Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies.[19]

However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004).  First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner."  *Hemphill*, 380 F.3d at 686 [citation omitted].  Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's]

---

[18]      42 U.S.C. § 1997e.

[19]      *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 347-48 (S.D.N.Y. 2002); *Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002).

exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id*. [citations omitted].  Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id*. [citations and internal quotations omitted].

Here, the parties' arguments raise issues falling under only Part 3 of the above-described three-part inquiry.  No issue exists under Part 1 of that inquiry since no allegation, argument or evidence exists that, had Plaintiff signed his name at the bottom of the Superintendent Taylor's written decision (affirming the denial of his grievance), he still could not have appealed to CORC.[20]  Furthermore, no issue exists under Part 2 of that inquiry since (1) Defendants have preserved their affirmative defense of non-exhaustion by raising it in their Answer (Dkt. No. 16, Part 1, ¶ 16), and (2) no allegation, argument or evidence exists that any Defendant engaged in conduct that hindered or prevented Plaintiff from being able to appeal to CORC sufficient to

---

[20]        I note that, in his Verified Complaint dated April 28, 2004, Plaintiff answered "Yes" to the question, "Is there a prisoner grievance procedure at [Gouverneur Correctional Facility]?"  (Dkt. No. 1, ¶ 4.a. [Plf.'s Verified Compl.].)  Plaintiff also stated that he used the first two levels of that procedure (i.e., filing a grievance with the Inmate Grievance Program Review Committee, and appealing the denial of the grievance to the Superintendent), but stopped short of appealing to CORC.  (*Id*. at ¶ 4.b. [stating that his appeal to the Superintendent was the "final" step he took in the exhaustion process]; *see also* Dkt. No. 1, Exs. A, A1, A2 [Plf.'s Verified Compl.].)  Finally, in his response to Defendants' assertion that Plaintiff never tried to appeal to CORC, Plaintiff fails to deny that assertion, and indeed concedes the truth of it.  (*See generally* Dkt. No. 37 [Plf.'s Opp. Papers, failing to specifically controvert, and thus "admitting" under Local Rule 7.1, the factual assertions contained in Paragraphs 3 and 4 of Defs.' Rule 7.1 Statement]; *see also* Dkt. No. 1, at 2-3 [Plf.'s Opp. Memo. of Law, arguing that he "appealed to the facility superintendent," and that he did not "sign the superintendents [sic] denial, and forward my appeal to [the] central office" because of [the] side effects of the medications he was taking].)

estop that Defendant from raising this defense.

     **B.**    **Whether Plaintiff Has Adduced Record Evidence Establishing that He Was *Physically* Unable to Sign the Bottom of the Superintendent's Decision During the Time in Question**

As stated above, Plaintiff argues that he was so nauseated, feverish and weak due to the adverse side effects of the medications he was taking to treat his Hepatitis C condition that he was *physically* unable to sign his name on the bottom of the Superintendent's decision during the time in question. (Dkt. No. 37, at 2-3 [Plf.'s Opp. Memo. of Law].) Specifically, Plaintiff states that these medications consisted of "INTRON/REBET/REG-INTRO." (*Id.* at 2.)[21] In support of this argument, Plaintiff cites Exhibits R-B1, R-B2, and R-C to his Opposition Memorandum of Law. (*Id.* at 2.) In addition, Plaintiff attaches a "Verification" page to the end of his Opposition Memorandum of Law, apparently trying to transform the arguments and allegations made in his Opposition Memorandum of Law into sworn factual assertions. (*Id.* at 13.)

I have carefully reviewed Exhibits R-B1, R-B2 and R-C to Plaintiff's Opposition Memorandum of Law, and I find nothing in them that suggests, during the permitted time to appeal (which was four working days following Plaintiff's receipt of Superintendent Taylor's written decision),[22] Plaintiff was *physically unable* to sign his name on the bottom of the

---

[21]    I note that "Intron" appears to be the brand name of Interferon Alpha, which is what Plaintiff claims to have taken in 2005 to treat his Hepatitis C. (*See* Dkt. No. 37, at 9 [Ex. R-C to Plf.'s Opp. Memo. of Law, attaching chart reflecting his adverse drug reactions to Interferon Alpha for period of May 27, 2005, through August 12, 2005].)

[22]    In November and December of 2003, the administrative regulation in question (which was N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7[c][4]) gave Plaintiff four (4) working days from receipt of the superintendent's written decision by which to file his appeal with CORC. *See Larry v. Byno*, 01-CV-1574, 2006 WL 1313344, at *3 (N.D.N.Y. May 11, 2006) (McAvoy, J.) (citing N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7[c][4]), *accord*, *Tackman v. Goord*, 99-CV-0438, 2005 WL 2347111, at *17 (W.D.N.Y. Sept. 26, 2005), *Kearsey v. Williams*, 99-CV-

Superintendent's decision  and submit it to the Grievance Clerk at Gouverneur C.F.[23]

Superintendent Taylor's written decision was dated November 26, 2003, which was a

Wednesday.  Assuming it took until Friday, November 28, 2003, for Superintendent Taylor's

written decision to reach Plaintiff (who was incarcerated in the same facility of which Taylor was

the superintendent), Plaintiff would have had until the end of December 4, 2003, by which to

sign the bottom of Taylor's written decision and submit it to the Grievance Clerk at Gouverneur

C.F.

Exhibits R-B1, R-B2 and R-C to Plaintiff's Opposition Memorandum of Law consist of

two pages of Plaintiff's "Ambulatory Health Records," and a one-page chart labeled "Adverse

Drug Reaction."  (Dkt. No. 37, at 7-9 [Exs. R-B1, R-B2, R-C to Plf.'s Opp. Memo. of Law].)

Granted, the records indicate that Plaintiff was, at the times referenced in the records, "fever[ish],

weak, [and] tired," and suffering from symptoms such as "nausea," "vomiting," "diarrhea" and

"ach[es]."  (*Id*.)  Furthermore, the records suggest that Plaintiff was suffering these symptoms

---

8646, 2002 WL 1268014, at *2, n.3 (S.D.N.Y. June 6, 2002), *vacated on other grounds*, 2004
WL 2093548, at *2-4 (S.D.N.Y. Sept. 20, 2004); *cf. Acosta v. Dawkins*, 04-CV-6678, 2005 WL
1668627, at *2, n.3 (S.D.N.Y. July 14, 2005).  (*See also* Dkt. No. 1, Ex. A2 [Plf.'s Verified
Compl., attaching Superintendent's written decision of Nov. 26, 2003, stating at bottom that
Plaintiff had "four (4) working days from receipt of this notice to file [his] appeal [with
CORC]"].)  That regulation was subsequently repealed and replaced with another regulation in
June of 2006, which extended the time period to seven (7) working days by which to file his
appeal with CORC.  N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.5(d)(1)(i).  I note that, during
the weeks following the expiration of the time period, Plaintiff could have requested, but failed
to request, an extension to that time period.  *See* N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.6(g)
(setting forth procedure for requesting extension of referenced time period).

     [23]    *See* N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.5(d)(1)(i) ("If the grievant . . .
wishes to appeal to the CORC, he or she must complete and sign Form #2133 and submit it to
the grievance clerk within seven (7) calendar days after receipt of the superintendent's written
response to the grievance.").

due to the medications he was taking to treat his Hepatitis C, specifically, Interferon Alpha.  (*Id.* at 8-9.)  However, the records make clear that he suffered those symptoms on 16 dates *between March 1, 2005, and August 12, 2005*.  (*Id*. at 7-9.)  These dates were at least one year, three months *after* the period of time in question, specifically, November 26, 2003, through December 4, 2003.

More important, Plaintiff has adduced no evidence that he was even taking the Hepatitis C medication in question during the period of time of November 26, 2003, through December 4, 2003.  Indeed, his lack of access to such medications during that time period (as well as other time periods) is essentially what he is complaining about in this action, namely, the refusal of DOCS to give him medications for Hepatitis C due to his failure to participate in the RSAT Program.  (*See* Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].)  Furthermore, the Ambulatory Health Records adduced by Defendants, which cover the period of November 20, 2003, through December 18, 2003, do not indicate that Plaintiff was taking any type of Hepatitis C medication (such as Interferon Alpha) during that time period.  (Dkt. No. 35, Part 5 [Ex. B to Sturtz Decl.].)  Nor do they indicate that Plaintiff was suffering any adverse reactions from the *non*-Hepatitis C medications he was taking during that time, which included Motrin, Albuterol and Azmacort.  (*Id*.)

As for Plaintiff's attempt to transform various factual assertions contained in his Opposition Memorandum of Law into sworn statements sufficient to constitute evidence for purposes of opposition to Defendants' motion for summary judgment, that attempt fails.  To be sufficient to create a factual issue for purposes of a summary judgment motion, a sworn

13

statement or affidavit must, among other things, not be based on speculation.[24]  Here, the crucial factual assertion in Plaintiff's Opposition Memorandum of Law is based on speculation. Specifically, that factual assertion reads as follows: "[C]onsidering my illness, and numerous medical adverse reaction[s], I *might have been* under going [sic] one or more medication[-induced] symptoms . . . [such as] weakness, fatigue, confusion . . . ."  (Dkt. No. 37, at 3 [Plf.'s Opp. Memo. of Law] [emphasis added].)

Even if Plaintiff had adduced some evidence that he was taking a Hepatitis C medication (such as Interferon Alpha) during the period of November 20, 2003, through December 18, 2003, I would find that evidence insufficient to create a genuine issue of material fact for three reasons: (1) none of the records provided by Plaintiff suggest that any of the adverse symptoms he experienced to Interferon Alpha included paralysis or unconsciousness (Dkt. No. 37, at 7-9 [Exs. R-B1, R-B2, R-C to Plf.'s Opp. Memo. of Law]); (2) Plaintiff possessed the physical ability to sign the bottom of the IGRC's written decision on November 20, 2003 (Dkt. No. 1, at 11 [Ex. A1 to Plf.'s Verified Compl.]), and to write a letter to a DOCS Official (apparently Brenda Tracy, a Nurse Administrator) on January 12, 2004 (approximately six weeks after November 26, 2003) (Dkt. No. 1, at 14 [Ex. C to Plf.'s Verified Compl.]); and (3) Defendants have adduced the affidavit of Dr. George S. Sturtz, a physician who was employed at Gouverneur C.F. during the time in question, who swears that, based on his review of Plaintiff's medical records, and his personal recollection of Plaintiff, Plaintiff was "physically able to file an appeal of a grievance

---

[24]     *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'"); *Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor and hearsay").

decision during the period in question" (Dkt. No. 35, Part 4, ¶¶ 5-8 [Sturtz Decl.]).

I note that the only analogous cases that I have found within the Second Circuit support my conclusion that Plaintiff has failed to adduce any evidence that he was *physically* unable to sign his name on the bottom of the Superintendent's decision during the time in question. *See Barad v. Comstock*, 03-CV-0736, 2005 U.S. Dist. LEXIS 38418, at *21, 22, 25 (W.D.N.Y. June 30, 2005) (during summary judgment analysis, accepting defendants' argument that plaintiff "was physically able to file a grievance" during his fourteen-day hospitalization due to kidney stones because "plaintiff testified that he was able to write [and attend a program] during his hospitalization," although ultimately finding that plaintiff had established other special circumstances, i.e., [1] that the correctional facility's medical staff had erroneously told plaintiff that his time to commence a grievance had lapsed, and [2] that plaintiff had relied on Second Circuit law at that time [in 1999] which did not require exhaustion of administrative remedies for such deliberate indifference claims); *cf. Goldenberg v. St. Barnabas Hosp.*, 01-CV-7435, 2005 U.S. Dist. LEXIS 2730, at *11-16 (S.D.N.Y. Feb. 22, 2005) (granting defendants' motion for summary judgment, in part because plaintiff adduced no evidence in support of his claim that administrative remedies were not "available" to him [i.e., during an analysis of Part 1 of the Second Circuit's three-part inquiry] insofar as he was, during the relevant time period, allegedly in a physically and mentally debilitated state).

For all these reasons, I find that Plaintiff has failed to adduce any admissible record evidence establishing that he was *physically* unable to sign the bottom of the Superintendent's decision during the time in question, sufficient to create a "special circumstance" justifying his failure to appeal to CORC.

15

C.      **Whether Plaintiff Has Adduced Record Evidence Establishing that He Was**
       ***Psychologically* Unable to Understand that He Was Required to Sign the**
       **Bottom of the Superintendent's Decision During the Time in Question**

As stated above, Plaintiff also argues that he was so weak, tired and confused due to the

adverse side effects of the medications he was taking to treat his Hepatitis C condition that he

was *psychologically* unable to understand that he was required to sign his name on the bottom of

the Superintendent's decision during the time in question in order to exhaust his administrative

remedies.  (Dkt. No. 37, at 2-3 [Plf.'s Opp. Memo. of Law].)  Again, in support of this argument,

Plaintiff cites Exhibits R-B1, R-B2, and R-C to his Opposition Memorandum of Law.  (*Id.* at 2.)

I reject Plaintiff's argument for reasons analogous to the reasons as stated above in Part

III.B. of this Report-Recommendation.  In the interest of brevity, I will not repeat those reasons

in detail here.  I will only make four points.

First, no evidence exists in the record that, during the time in question (i.e., November 26,

2003, to December 4, 2003), Plaintiff was taking any medication to treat his Hepatitis C

condition, or that he was suffering any adverse psychological effects from the medications he

was taking (which included Motrin, Albuterol and Azmacort).  *See*, *supra*, Part III.B. of this

Report-Recommendation.

Second, even if he was taking a Hepatitis C medication (such as Interferon Alpha) during

the time in question, none of the medical records provided by Plaintiff suggest that any of the

adverse symptoms he experienced to the medication Interferon Alpha were psychological in

nature, such as confusion, hallucination, loss of consciousness or loss of memory.  (Dkt. No. 37,

at 7-9 [Exs. R-B1, R-B2, R-C to Plf.'s Opp. Memo. of Law].)  Indeed, the chart labeled "Adverse

Drug Reaction" *expressly* states that, on the twelve dates between May 27, 2005, and August 12,

2005, on which Plaintiff experienced adverse symptoms to the Hepatitis C medication Interferon Alpha, on none of those dates did Plaintiff experience "confusion[]" or "depression." (*Id.* at 9 [Ex. R-C to Plf.'s Opp. Memo. of Law].)

Third, the record evidence indicates that Plaintiff possessed the mental acuity on November 20, 2003 (a mere six to fourteen days before the time in question) to do the following: (1) sign the bottom of the IGRC's written decision, in order to appeal the IGRC's denial of his grievance to Superintendent Taylor (Dkt. No. 1, at 11 [Ex. A1 to Plf.'s Verified Compl.]); and (2) have a conversation with Dr. George S. Sturtz about his medical treatment (Dkt. No. 35, Part 4, ¶ 5 [Sturtz Decl.]).

Fourth, I can find nothing confusing about the notice contained at the bottom of Superintendent Taylor's written decision of November 26, 2003, which contained the following language before three blank spaces and a signature line for the grievant:

### APPEAL STATEMENT

> If you wish to refer the above decision of the Superintendent, please sign below and return this copy to your Inmate Grievance Clerk.  You have four (4) working days from receipt of this notice to file your appeal.  Please state why you are appealing this decision to C.O.R.C.

(Dkt. No. 1, Ex. A2 [Plf.'s Verified Compl.] [bold font in original].)  Nor can I find anything confusing about the DOCS regulation requiring that Plaintiff appeal to CORC in order to exhaust his administrative remedies.  *See* N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.5(d)(1)(i) (2008) (formerly codified at 7 N.Y.C.R.R. § 701.7, which was repealed and replaced with N.Y. Comp. Codes R. & Regs. Tit. 7, § 701.7[c][4] on June 28, 2006).

For all these reasons, I find that Plaintiff has failed to adduce any admissible record

evidence establishing that he was *psychologically* unable to understand that he was required to sign the bottom of the Superintendent's decision during the time in question, sufficient to create a "special circumstance" justifying his failure to appeal to CORC.

I note that I reach this conclusion without relying on the fact that, before the time in question (i.e., November 26, 2003, to December 4, 2003), Plaintiff appears to have been familiar with the requirement that he appeal to CORC in order to exhaust his administrative remedies, since he was both an experienced prisoner (having been incarcerated since March 28, 1980) and a fairly experienced litigant (having filed at least four court actions or appeals regarding his confinement). *See Muniz v. New York*, Index No. 003709/1993, Docket Sheet (N.Y.S. Sup. Ct., Orange County (reflecting that RJI was filed on June 9, 1993); *Muniz v. Doe*, Index No. 004789/1997, Docket Sheet (N.Y.S. Sup. Ct., Orange County) (reflecting that RJI was filed on July 16, 1997); *Muniz v. David*, No. 96428, Memorandum and Order at 2 (N.Y. App. Div., 3d Dept., March 24, 2005) (stating, "This proceeding was commenced in October 2003"); *Efrain J. Muniz v. N.Y.S. Div. of Parole*, 695 N.Y.S.2d 619 (N.Y. App. Div., 3d Dept., 1999).[25]

D.    **Whether Plaintiff's Failure to Appeal to CORC Was Merely a "Technical Mistake" that Should Be Excused in Light of His *Pro Se* Status and the Meritorious Nature of His Claim**

Finally, as stated above, Plaintiff argues that his failure to appeal to CORC was merely a "technical mistake[]" that should be excused due to (1) the special leniency that is to be afforded

---

[25]    It is unclear whether several other prisoner actions and appeals were also brought by Plaintiff or the one other "Efrain Muniz" who has ever been incarcerated by the New York State DOCS.  *See, e.g., Muniz v. Coughlin*, Index No. 002528/1992 (N.Y.S. Sup. Ct., Dutchess County); *Muniz v. Green Haven C.F.*, Index No. 00937/1994 (N.Y.S. Sup. Ct., Dutchess County); *Muniz v. N.Y.S. Div. of Parole*, Index No. 002113/1994 (N.Y.S. Sup. Ct., Dutchess County); *Efrain Muniz v. Selsky*, No. 91967, Memorandum and Judgment (N.Y. App. Div., 3d Dept., Jan. 9, 2003).

*pro se* litigants such as Plaintiff and (2) the obvious merit that his claim possesses.  (Dkt. No. 37, at 3 [Plf.'s Opp. Memo. of Law].)

Plaintiff is incorrect when he characterizes either his mistake or the final step of the exhaustion process as merely "technical" in nature.  I have found no evidence in the record that, during the period of time in question (i.e., November 26, 2003, to December 4, 2003), Plaintiff *tried* to appeal to CORC, but simply forgot to (or did not know he had to) sign his name to the bottom of Superintendent Taylor's written decision of November 26, 2003.  Moreover, the requirement that a prisoner appeal to CORC in order to complete the exhaustion requirement is not meant to ensnare unsuspecting prisoners in a meaningless procedural step but is meant, largely, to notify DOCS of disputes, and enable DOCS to resolve or reduce those disputes, before prisoners literally make a federal case out of those disputes.[26]

Plaintiff is incorrect also when he argues that the special leniency that is normally afforded *pro se* litigants may be employed by him to somehow excuse his failure to pursue the final step of the exhaustion process.  As an initial matter, nearly every prisoner who is required to take the third step of the exhaustion process is, at the time that he must take that third step, proceeding *pro se*.  As a result, relieving prisoners of that requirement simply because they are

---

[26]     *See Jones v. Block*, 127 S. Ct. 910, 923 (2007) (referring to "alert[ing] prison officials to a problem" as "one of the leading purposes of the exhaustion requirement") [citations omitted]; *Woodruff v. Ngo*, 548 U.S. 81, 89 (2006) ("[E]haustion [of administrative remedies in the context of prisoner grievances] promotes overall efficiency . . . ."); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."); *United States v. Al-Marri*, 239 F. Supp. 2d 366, 367 (S.D.N.Y. 2002) ("The purpose of the exhaustion requirement is to improve prison administration, filter out frivolous claims, and clarify the contours of controversies for cases that are ultimately brought to court.") [citation omitted].

proceeding "pro se" at that time would eviscerate the requirement.  In addition, as explained in

my Report-Recommendation of May 2, 2007 (Dkt. No. 30, at 13), while special leniency might

be sufficient to overcome a certain lack of specificity in a pleading and/or to justify the voluntary

granting by the Court of a certain amount of procedural leeway to the *pro se* litigant, I am aware

of no authority suggesting that it is sufficient to excuse a failure to comply with a federal statute

such as the PLRA.[27]  (Indeed, authority exists for the proposition that special leniency is not

sufficient to excuse even a failure to comply with the Court's procedural rules.)[28]  Furthermore,

special leniency is normally afforded *pro se* litigants because of their *inexperience* (or lack of

familiarity with legal procedures or terminology).[29]  However, here, Plaintiff had, before the time

---

[27]      *See Houze v. Segarra*, 217 F. Supp.2d 394, 395-396 (S.D.N.Y. 2002) (dismissing prisoner's complaint for failure to exhaust administrative remedies, as required by PLRA, after acknowledging that prisoner, as *pro se* litigant, is afforded special leniency); *see also Smith v. Keane*, 96-CV-1629, 1998 U.S. Dist. LEXIS 3702, at *6, 9-18 (S.D.N.Y.  Mar. 25, 1998) (dismissing prisoner's complaint for failure to comply with applicable statute of limitations, after acknowledging that prisoner, as *pro se* litigant, is afforded special leniency); *Turner v. Johnson*, 177 F.3d 390, 391-392 (5th Cir. 1999) ("[N]either a party's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits [excusing the party's failure to comply with a statute of limitations].").

[28]      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license . . .  not to comply with relevant rules of procedural and substantive law."); *Edwards v. I.N.S.*, 69 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally, . . . *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them.") [citations omitted].

[29]      *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir. 1994) (affording special leniency to "a *pro se* litigant unfamiliar with the requirements of the legal system"); *Salahuddin v. Coughlin*, 781 F.2d 24, 29 (2d Cir. 1986) (liberally construing *pro se* complaints benefits persons "unfamiliar with the lawyerlike method of pleading claims"); *Edwards v. Selsky*, 04-CV-1054, 2007 WL 748442, at *2-3 (N.D.N.Y. Mar. 6, 2007) (Mordue, C.J., adopting Report-

in question, at least some litigation experience.[30]

Finally, I am not persuaded by Plaintiff's argument that he should be excused from the requirement that he take the third step of the exhaustion process because his claim has merit.  As an initial matter, I do not understand the meritorious or unmeritorious nature of a claim to be a factor in the Second Circuit's three-part inquiry appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA.  *See Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004); *see also*, *supra*, Part III.A. of this Report-Recommendation.  Moreover, even if Plaintiff's claim does have merit (an issue I am not deciding in this Report-Recommendation, given the grounds for Defendants' motion),[31] such a fact would undermine his argument as much as it would support his argument, in my view.  Simply stated, if Plaintiff's claim has merit, then it would be more likely that he

_____

Recommendation of Lowe, M.J.) (stating that pro se litigants' "lack of [experience] is the reason for conferring the special status upon *pro se* litigants"); *see also Korsunskiy v. Gonzales*, 461 F.3d 847, 850 (7th Cir. 2006); *Int'l Bus. Prop. v. ITT Sheraton Corp.*, 65 F.3d 175, at *2 (9th Cir. 1995); *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979); *Zaczek v. Fauquier County*, 764 F. Supp. 1071, 1078 (E.D. Va. 1991); *Life Science Church v. U.S.*, 607 F. Supp. 1037, 1039 (N.D. Ohio 1985); John C. Rothermich, *Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice*, 67 FORDHAM L. REV. 2687, 2697 (Apr. 1999) [citing cases].

[30]        *See*, *supra*, Part III.C and note 25 of this Report-Recommendation.  (*See also* Dkt. No. 30, at 14, nn. 26, 31 [Report-Recommendation of May 2, 2007].)

[31]        I note that, contrary to Plaintiff's argument (*see* Dkt. No. 37, at 3), the fact that DOCS consented to changing its RSAT policy, pursuant to a proposed settlement in the case of *Hilton v. Goord*, 05-CV-1038 (N.D.N.Y.), hardly means that Defendants Goord and Wright have "conceded" the merit of Plaintiff's claim in this action, which is for money damages due to an alleged constitutional violation.  Indeed, the Notice that Plaintiff provides in support of his argument expressly states, "This settlement agreement only relates to changes in policy, and not to any claims that a claim member may have for damages as a result of the past policy."  (Dkt. No. 37, at 12 [Ex. R-E to Plf.'s Opp. Memo. of Law].)

would have been victorious in his third step of the exhaustion process (had he taken that step), thus obviating the need to resort to federal litigation.  In this regard, the asserted meritorious nature of his claim weighs in favor of a finding that he should be required to have taken that step.

For all these reasons, I find that the nature of Plaintiff's mistake, his *pro se* status, and the asserted meritorious nature of his claim do *not* constitute "special circumstances" justifying his failure to appeal to CORC.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 35) be **GRANTED**.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[32]

---

[32]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: June 30, 2008
        Syracuse, New York

_George H. Lowe_
George H. Lowe
United States Magistrate Judge

---

omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

23